Nos. 4921, 4924, 4927. AUGUST 13, 1925.

---

## ELLIS v. McALLISTER, superintendent.

1. Under the act of 1900 (Acts 1900, p. 87, sec. 2), the trustees of the Confederate Soldiers Home of Georgia are authorized to make all necessary rules and regulations for the government thereof and for the admission of inmates therein, and to exercise all other powers incident to the same.

2. Certain rules adopted by the trustees of the Confederate Soldiers Home, as set out in the statement of facts, including one which provides that

inmates of the home who violate or refuse to conform to the regulations adopted by the board of trustees may be expelled from the home, are examined and found to be reasonable.

3. Under the evidence in the case the court did not err in refusing an injunction.

No. 4941. AUGUST 13, 1925.

Petition for injunction. Before Judge E. D. Thomas. Fulton superior court. May 11, 1925.

W. A. Ellis brought an equitable petition for injunction against W. E. McAllister, and alleged in substance the following: W. E. McAllister is superintendent of the Confederate Soldiers Home of Georgia, an institution for the benefit of ex-Confederate soldiers of Georgia, and resides within the institution. Plaintiff served four years in the military service of the Confederate States, and was wounded three times while in the line of duty; he is eighty-two years of age, has no money or property of any kind or character with which to support himself, and is physically unable by reason of his age to earn a support for himself; he has been an inmate of the Confederate Soldiers Home for the past several years, and by reason of his honorable service, his poverty, and his infirm condition he is entitled to the benefits of said institution. He has at all times tried to behave himself as a gentleman throughout his entire life, as well as while an inmate of said institution. He was regularly admitted to the Confederate Soldiers Home, and is entitled to the benefits thereof. Notwithstanding his good conduct, McAllister, superintendent of the home, has, by the use of abusive language and by the oppressive use of his authority as superintendent of the institution, made plaintiff's life as an inmate of the institution in his declining years almost unbearable. During the latter part of April, 1925, McAllister, as superintendent, in pursuance of his scheme of persecution of plaintiff without provocation, cause, reasonable justification, or authority of law, turned plaintiff from the doors of the institution and declined to permit him to re-enter. Plaintiff is unable to work; he has no money with which to support himself, and is by reason of the conduct of McAllister left to the mercy of the world, which has no time for the decrepit and infirm. Plaintiff has no remedy at law; and unless a court of equity takes jurisdiction of his case, he will suffer irreparable injury, and the court's failure to take cognizance of his cause will, by exposure to inclement weather and

lack of sufficient nourishment of his body, "speed the grim reaper on his last mission to mortal combat with plaintiff, and by reason of plaintiff's undernourished condition he will be unable to survive the combat." The prayer was for process, and that defendant, his agents, and accomplices be enjoined from in any wise interfering with or prohibiting plaintiff from occupying the institution as an inmate, either directly or indirectly, until the further order of the court; and that upon the final hearing McAllister and his agents be enjoined from prohibiting plaintiff from occupying the institution as an inmate.

The defendant filed an answer denying most of the allegations, and averring specifically that the plaintiff was incorrigible and unmanageable; that he was an inmate of the Confederate Soldiers Home four or five years ago, and at that time his conduct was of such a nature that he was suspended by the board of trustees for ninety days; he stayed away from the Soldiers Home for two or three years, and was taken back on his promise of good behavior. Prior to October, 1924, the conduct of the plaintiff while in the Soldiers Home became violent, disorderly, and abusive, and he made violent threats against the defendant without justification or provocation, and constantly stated to the inmates of the home that he had already killed two men and he was going to add a third to his list by killing the defendant. Plaintiff's conduct became so violent and menacing that defendant brought the matter to the attention of the board of trustees of the home in October, 1924; at this meeting, while the charges against Ellis were being read before the board of trustees, he arose and became violent; he shook his finger in the face of one of the female nurses, Mrs. Card, screamed at her, called her a thief and a liar, and at the same time also called the defendant a thief and a liar. Neither Mrs. Card nor the defendant had done anything to justify the language or conduct on the part of Ellis. R. deT. Lawrence, president of the board of trustees, who was presiding at this meeting, remonstrated with Ellis and asked him to sit down; he refused to do so and at the same time shook his fist at Gen. Morgan, of Savannah, one of the members of the board of trustees, and threatened then and there to strike him; his manner was savage and belligerent, and he acted like an insane man. Gen. Morgan tried to reason with him, but Ellis would not listen to reason, and

continued to threaten to strike him. The board then ordered
Ellis to leave the room, but he declined to do so. County police-
men West and Peacock then came in, arrested Ellis, and carried
him to jail. The board of trustees then passed a resolution at
this meeting, directing the defendant to swear out a writ of
lunacy against Ellis; thereupon the defendant swore out a writ
of lunacy against Ellis, and this writ [application] was signed by
H. E. Ellis, a brother of the plaintiff. After this application for
a writ of lunacy had been sworn out, Ellis made promises of good
behavior towards the defendant; and the board, being willing and
glad to do what they could for him, agreed not to press the trial
for lunacy; the charge was therefore dismissed against him, and
he came back to the Soldiers Home. After he had been back in
the home for awhile this last time, he again began breaking the
rules and regulations of the home, and made repeated threats that
he was going to kill the defendant; he used the most vile and
profane language in the presence of two lady nurses of the home,
and a lady visitor, and in the presence of the two police officers,
and of the president of the board of trustees. The board of
trustees realized that the presence of Ellis in the Soldiers Home
was a menace and peril to the other inmates and to the lady nurses.
J. P. Webb, who was the vice-president of the board of trustees,
and chairman of the investigation committee, made a thorough
investigation at this time of Ellis's conduct, and brought the mat-
ter before the board of trustees in April, 1925. Mr. Webb, after
a full investigation of Ellis's conduct, stated to the board of
trustees at this meeting that Ellis's behavior had been of such
an inexcusable and violent nature that Ellis would either have
to be expelled from the Soldiers Home or the home itself would
have to be broken up. Mr. Webb made a motion that Ellis be
removed from the home immediately, and that he be indefinitely
suspended; and the board unanimously by a rising vote voted in
favor of this motion. By the act of 1900 (Acts 1900, p. 87, sec.
2), it is provided that there shall be a board of trustees appointed
by the Governor, consisting of eleven members, one from each
congressional district, whose duty it shall be to have charge of
the Confederate Soldiers Home and provide all necessary rules and
regulations for the government of the home. One of the rules
passed by the board of trustees is that each inmate of the home

is expected and required to so live and conduct himself in the home as not to interfere with the enjoyment and advantages of his comrades, and that each inmate must conform to the regula- tions adopted by the board of trustees, and must yield respect and obedience to the officers charged with their enforcement. Section 11 of the rules and regulations of the board of trustees provides that the superintendent of the home is clothed with full authority to' enforce the regulations adopted by the board of trustees, and it is his duty to exact strict compliance therewith. Section 12 of these rules and regulations provides that inmates who violate · or refuse to conform to the regulations adopted by the board of trus- tees, or refuse to perform and properly discharge duties to which they may be assigned or appointed, may be expelled from the home. Defendant avers that the plaintiff has been treated by him with the greatest courtesy and forbearance ; defendant has no per- sonal animosity towards the plaintiff, and has great love for the Confederate Soldiers Home and is vitally interested in its wel- fare ; but the presence of the plaintiff at the home is a great menace to the comfort and peace of the other inmates of the home. It is dangerous for him to remain there. He is constantly threatening to kill the defendant; it is the plaintiff's own con- duct that has brought about his expulsion, and he has no one to blame or censure but himself.

After hearing evidence the prayer of the petition for injunc- tion was denied, and the plaintiff excepted.

*Scott, Hornbuckle & Moore,* for plaintiff.

*Reuben R. Arnold, Edward C. Hill,* for defendant.

HILL, · J. (After stating the foregoing facts.) The evidence on the interlocutory hearing for the plaintiff and for the defendant was in substantial accord with the allegations of the petition and the averments in the answer of the defendant.

Under the act of 1900 (Acts 1900, p. 87, sec. 2) it is provided : "that there shall be a board of trustees appointed by the Gov- ernor, consisting of eleven members, one from each congressional district, who shall serve without compensation for the term of five years, whose duty it shall be to have charge of said institu- tion and provide all necessary rules and regulations for the gov- ernment thereof, and for the admission therein; to exercise all other powers incident to the same, not conflicting with the law and

requirements of this act; to appoint a superintendent thereof . . and such other assistants or employees as may be necessary to the efficient administration of the institution; prescribe their duties," etc. The answer of the defendant, which was sworn to and tendered in evidence on the trial, averred that one of the rules passed by the board of trustees is that each inmate of the Confederate Soldiers Home is expected and required to so live and conduct himself in the home as not to interfere with the enjoyment and advantages of his comrades, and that each inmate must conform to the regulations adopted by the board of trustees and must yield respect and obedience to the officers charged with their enforcement. Section 11 of the rules and regulations of the board of trustees provides that the superintendent of the home is clothed with full authority to enforce the regulations adopted by the board of trustees, and that it is his duty to exact strict compliance therewith. Section 12 of these rules provides that inmates who violate or refuse to conform to the regulations adopted by the board of trustees, or refuse to perform and properly discharge duties to which they may be assigned or appointed, may be expelled from the home.

We are of the opinion that under the act of 1900, supra, the trustees of the Soldiers Home had full authority to adopt the rules which are set out above, and that under the rules and regulations adopted inmates could be expelled from the home for a violation of such rules. We are also of the opinion that the rules adopted for the purpose of the government of the home were reasonable, and that such rules are necessary in order to preserve good order and to enforce discipline and to preserve health, etc. See, in this connection, 5 C. J. 368, 369, § 231. No institution like the one under consideration can be successfully conducted without proper enforcement of reasonable rules and regulations made for that purpose. Being of the opinion that the trustees of this institution had authority to pass the rules and regulations under consideration, and that they are reasonable, the court did not err, under the evidence in this case, which we have carefully examined, in refusing the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*